FILED
2022 Dec-14  AM 10:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **LISA M. LOONEY,** | ) |
| | ) |
| **Plaintiff,** | ) **CIVIL ACTION NO.:** |
| | ) |
| **V.** | ) |
| | ) **JURY DEMAND** |
| **HCDJHA, LLC a/k/a HENDRICK** | ) **ENDORSED HEREON** |
| **CHEVROLET HOOVER,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

**COMES NOW,** Plaintiff Lisa M. Looney ("Plaintiff"), by and through her undersigned counsel, and makes the following allegations against Defendant HCDJHA, LLC a/k/a/ Hendrick Chevrolet Hoover ("Hendrick Chevrolet Hoover" or "Defendant"):

## I.      JURISDICTION AND VENUE

1.      The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question).

2.      Venue lies with this Court pursuant to 28 U.S.C. § 1391 as the acts giving rise to the claims alleged herein occurred within this district.

3.      Venue lies with this Court on the breach of contract state law claim, pursuant to 28 U.S.C. § 1367, because the claim is part of the same case or

1

controversy as the claims over which the court has original jurisdiction (28 U.S.C. § 1367(a)).

4.    This suit is authorized and initiated pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1964, 42 U.S.C § 2000e *et. seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et. seq.* (the "ADEA"), and the Americans with Disabilities Act Amendments Act of 2008 (the "ADAAA").  The jurisdiction of this Court is invoked to secure protection of and redress the deprivation of rights secured by these federal statutes, providing for relief related to discrimination, a hostile work environment, and retaliation.

5.    Plaintiff has fulfilled all conditions precedent to the institution of this action.

6.    At all relevant times, Defendant Hendrick Chevrolet Hoover has been a covered entity under Section 101(2) of the Americans with Disabilities Act, 42 U.S.C.A. § 12111(5)(A).

7.    Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") on November 23, 2021 (attached as Exhibit A).

8.    Plaintiff timely filed this lawsuit within 90 days of receipt of the right to sue letter (attached as Exhibit B).

9.     All of the actions taken by Defendant against Plaintiff occurred within Jefferson County, Alabama.

## II.   PARTIES

10.     Plaintiff is over the age of nineteen and is a citizen of the United States and a resident of the State of Alabama.

11.     Plaintiff was employed as Finance Manager at Hendrick Chevrolet Hoover in Hoover, Alabama from June of 2018 through July 13, 2021.

12.     Defendant is a foreign limited lability company and is subject to suit under Title VII, the ADEA, and the ADAAA.

13.     Defendant Hendrick Chevrolet Hoover is located in the city of Hoover in Jefferson County, Alabama.

14.     The Defendant employs at least twenty (20) persons.

## III.   FACTS

15.     Plaintiff is a 51-year-old female.

16.     Plaintiff began working at Hendrick Chevrolet Hoover as Finance Manager in June of 2018.

17.     During Plaintiff's employment, Plaintiff was one of the top performers for the company.

18.     Most months, Plaintiff finished in the top 10 of approximately 350 employees.

19.     In January of 2019, Joel Smith (age approximately 49), the General Manager of the Chrysler store, was promoted to Executive General Manager, which meant he was to oversee both the Chrysler store and the Chevrolet store. Plaintiff received her first pay plan change when Smith was promoted. The new pay plan basically paid Plaintiff less money for the same work and required her to perform at an even higher standard to receive the same compensation Plaintiff previously received. Plaintiff worked even harder to meet production goals.

20.     In February of 2019, while Plaintiff was on the new pay plan, Smith came to her office and told her, "Well, the new pay plan didn't affect you at all." Plaintiff replied, "No sir. I maximize my pay plan like I maximize the profit for the dealership each day."

21.     In May of 2019, Plaintiff was promoted to Finance Director, but had to do more than the previous male Finance Director, Josh Back—Plaintiff had to do the Finance Manager's job and the Finance Director's job—but was paid less than Back. Plaintiff stayed on the same Finance Manager pay play with an extra percentage paid to her from what the Finance Department did for the month. Smith never reported to Human Resources that Plaintiff had been promoted to Finance Director and so Human Resources understood Plaintiff to still be a Finance Manager. Smith also did

not submit to Human Resources a copy of the pay plan that he had given Plaintiff for the Finance Director position.

22.    When Smith ultimately demoted Plaintiff in January of 2020 and replaced her with a younger (approximately age 37 now), less experienced, and lower performing male, Chris Cornelius, Smith did not have to report to HR that he had demoted Plaintiff. Smith told Plaintiff that he was demoting her to the Finance Manager position "not because of any performance issue" but because she "looked tired."

23.    At the same time that Plaintiff was demoted back to Finance Manager, Smith again instituted a new pay plan, that had even more dire consequences than the one he had implemented the year before. Smith told Plaintiff and the other female Finance Manager, Shameka Montgomery, that they had to sign off on the new pay plan or they would lose their jobs. In 2019, Montgomery and Plaintiff both made approximately $250,000 and both produced 1.2 million dollars for the company, which was more than the Finance Department had ever produced. Under Plaintiff's direction, the Finance Department had won the Elite Award from the Hendrick Organization which was the first time ever for the Hendrick Chevrolet Hoover Finance Department. After Montgomery and Plaintiff had time to review the new pay plan, it was very clear that if they produced the exact amount they produced in the prior year, they would each be taking a $5,000 a month pay cut ($60,000 pay cut

for the year). This pay cut increased the amount Smith made because he was paid off the total net profit of the store. So, the more he cut what Montgomery and Plaintiff were paid, the more his bottom line increased and more he was paid.

24.     Montgomery ultimately moved to a store location in another state several months after Smith instituted this pay plan. When Montgomery left, Skylar Sumners (male Finance Manager) and Plaintiff were the only two Finance Managers at the dealership and they often had to work 12 to 14-hour days.

25.     Plaintiff found out that Spring that she has Type 2 Diabetes, which is a qualified disability under the Americans with Disabilities Act, As Amended. The day after Plaintiff was diagnosed with Type 2 Diabetes, Plaintiff explained to Smith and Cornelius while at work about her health issues and that she would have frequent doctors' appointments until her medicine was regulated. Plaintiff rarely missed work because of her condition. Plaintiff scheduled appointments on her days off or during a lunch break.

26.     The new Finance Director, Chris Cornelius, picked on Plaintiff at work and seemed to be threatened by the fact that Plaintiff, a female Finance Manager, outperformed him monthly at work (the performance numbers were routinely shared with the entire company). After Cornelius wrote up Plaintiff for issues that she did not have (accusing of her of leaving work multiple times without permission), Plaintiff called HR and reported the mistreatment she was experiencing from

Cornelius. Plaintiff told Jenni Capps with HR that she felt like Cornelius was targeting her and bullying her because of her age and because she is a woman and that his write up was completely unfounded. Plaintiff told Capps that she felt like Cornelius was intimidated because she outperformed him. Plaintiff told Capps that she did not miss work unless it was a scheduled vacation. Plaintiff had been out one time because of the flu and she almost never (with one exception being when she was very sick) left early. Plaintiff locked up the dealership just about every night she worked.

27.     Capps called Smith and reported to Smith what Plaintiff had told her.

28.     On April 24, 2020, Plaintiff was called in to Smith's office at the Chrysler building. When Plaintiff arrived, Cornelius was waiting in Smith's office. Smith and Cornelius ultimately wrote Plaintiff up again. Among other things, Cornelius said that Plaintiff had been out a lot. Plaintiff corrected him and said, "No, I was out one extra day, and that was the day I found out I was diabetic." Plaintiff believes this write up was in retaliation for her complaint to HR.

29.     Also in the Spring of 2020, Plaintiff had to quarantine for 14 days due to potential Covid exposure at work and to comply with company policy. Plaintiff began her quarantine on or about April 30, 2022 and never contracted Covid. Prior to Plaintiff's quarantine, Smith had approved Plaintiff taking several vacation days in May of 2020. Following Plaintiff's quarantine, Smith told Plaintiff that she could

no longer take the vacation since she had been out for two weeks on quarantine. Around the same time, a male Internet Manager contracted Covid and quarantined for 14 days. The male Internet Manager returned to work for about a week and, in sharp contrast to Smith's treatment of Plaintiff, Smith allowed the male Internet Manager to take the next week off for his family vacation.

30.     Plaintiff continued to feel mistreated by Cornelius and Smith based on her gender, age, and disabilities.

31.     On April 28, 2021, Plaintiff had emergency heart surgery due to a heart condition. Plaintiff's heart condition is also a qualified disability under the ADAAA. Plaintiff spent two days in the ICU and was out of work for about three weeks for her recovery.

32.     While Plaintiff was on leave for her surgery, General Manager Nicole Moley (age approximately 30) sent Hendrick Chevrolet Hoover employee Trey Meares to Hendrick Chevrolet Hoover's two-week finance training, clearly getting him ready to replace Plaintiff.

33.     Also while Plaintiff was on leave for her surgery, Cornelius split up cash deals and attempted to put some in Plaintiff's name. This would have hurt Plaintiff's numbers because she was on leave and not able to handle any finance deals and the cash deals reduced the finance manager's averages and percentages and, thus, their potential pay (when a Finance Manager handled a cash deal, the

customer typically did not buy products and, thus, the cash deal would likely be a zero-profit deal). When Plaintiff returned to work, she told Moley "You can't put deals in my name when I was not even working." The deals were ultimately removed from Plaintiff's name.

34.     Plaintiff's return to work from her leave was on May 17, 2021. When she returned to work, she requested that Cornelius and Moley allow her to work less hours, rather than her standard 12 to 14-hour days, while she continued to recover from her heart surgery. However, the accommodation request was ignored, and Cornelius continued to schedule Plaintiff for closing the dealership at night, which often had her at the dealership until 11:00 p.m. or even 12:00 a.m. and working 12-to-14-hour days.

35.     After Plaintiff returned to work, Cornelius and Moley continued to send Plaintiff cash deals even when other employees were next on the log. On May 25, 2021, Moley attempted to send Plaintiff another cash deal after Plaintiff had already handled two that day. Plaintiff told Moley that she was not next on the log for cash deals. Moley said that Plaintiff had to "catch up" with cash deals to make up for her time "spent on vacation" (referring to Plaintiff's medical leave).

36.     At work on May 27, 2021, Moley again told Plaintiff that Plaintiff would have to agree to the cash deals, or she would not have a job. Plaintiff told Moley that she was putting Plaintiff in between a rock and a hard place, and that

Plaintiff could not afford to lose her job or her health insurance. Moley told Plaintiff that she had wanted to let Plaintiff go. Moley also told another manager that Plaintiff had become a liability because of the time Plaintiff had missed for her surgery and that Moley could not afford for Plaintiff to go out on leave again.

37.     Upon information and belief, Moley was planning to replace Plaintiff with a younger, male (Meares) that Moley was promoting from Internet Manager.

38.     The requirement that Plaintiff take cash deals even though she was not next on the log caused her extreme stress and anxiety because it negatively affected her numbers at work and the potential income she could receive at work. Plaintiff was being harassed and punished for taking medical leave.

39.     On May 27, 2021, Plaintiff reported the harassment she was experiencing to Jasmine Walker in HR. Plaintiff told Walker about the cash deals put in her name when she was on leave for her heart surgery and about Moley forcing Plaintiff to take cash deals upon Plaintiff's return from leave. Plaintiff told Walker that she felt like she was being punished for her medical issues and being on leave for the surgery. Walker told Plaintiff she would conduct an investigation, but Plaintiff never heard anything further about the investigation.

40.     On a Thursday and Friday about a month after Plaintiff's heart surgery, Plaintiff had a kidney stone that was approximately 4.5 mm in size. The procedure for removing the kidney stone was not available during the weekends and so Plaintiff

had to schedule her surgery for the following week. Plaintiff continued to be in severe pain with the kidney stone while she awaited the surgery. Plaintiff also had major nausea from the pain medication she was taking that caused repeated vomiting. That Saturday, while Plaintiff was home, Moley reached out to Plaintiff about coming into work. Plaintiff informed Moley about the kidney stone and the pain she was in and the nausea from her pain medications. However, at 2:00 p.m. that afternoon, Moley asked that Plaintiff come into work because the dealership was slammed. Plaintiff went to work because she was afraid of losing her job based on the way Moley was acting. Once Plaintiff arrived, Moley was not even at work. Jody Marxen, the then Sales Manager, ultimately sent Plaintiff home because of how sick she was.

41.     Due to the stress and anxiety Plaintiff had at work, she started having chest pains almost every day. Management also continued to make changes to Plaintiff's pay by changing the way her commission was calculated or what was to be included in the averages and percentages for her production numbers and these changes negatively affected the compensation Plaintiff received.

42.     On July 13, 2021, Smith and Moley terminated Plaintiff from employment. When Plaintiff asked Smith if he would mark Plaintiff ineligible for rehire within the company, Smith told Plaintiff, "Well, it depends on how you handle this."

43.     Plaintiff later learned that she was falsely accused by Defendant of fraudulently forging signatures on a client's contract. Plaintiff has always been a stickler for compliance and would never do such a thing. The representative for Pentagon Federal Credit Union later told Plaintiff that the credit union was never notified that there was a fraudulent contract, which would have been standard procedure if fraud was actually involved.

44.     Any reasons proffered by Hendrick Chevrolet Hoover for Plaintiff's discipline and termination are false and really pretext for discrimination.

45.     Hendrick Chevrolet Hoover discriminated against Plaintiff based on her disabilities, age, and gender, including but not limited to, when it reduced her pay through compensation calculation changes, disciplined her, demoted her, required her to take the cash deals during and following her medical leave, and ultimately terminated her from employment.

46.     Hendrick Chevrolet Hoover failed to engage in the interactive process when Plaintiff requested the accommodation of reduced hours following her return from leave. Upon information and belief, management never reported to HR that Plaintiff took leave for medical issues (when she had the heart surgery), which would have negatively affected her ability to get short-term disability and long-term disability for her health issues.

47.     Hendrick Chevrolet Hoover also retaliated against Plaintiff for complaining about the discriminatory treatment she was receiving because of her age, gender, and disabilities, and for requesting the accommodation of reduced hours by taking adverse actions against her, including but not limited to, reducing her pay through compensation calculation changes, disciplining her, demoting her, requiring her to take the cash deals during and following her medical leave, and terminating her from employment.

48.     In addition, Hendrick Chevrolet Hoover subjected Plaintiff to a hostile work environment based on her disabilities, age, and gender.

49.     As a result of the unlawful discrimination and retaliation, Plaintiff has lost income and has been damaged financially. Plaintiff has also suffered serve mental and emotional distress.

50.     Plaintiff was replaced by Meares, a younger (now age 29), non-disabled, and less qualified male.

51.     Over a year later, Plaintiff, who had purchased a car and the service maintenance package at Hendrick Chevrolet Hoover on May 29, 2021, made an appointment to have her oil changed in August of 2022. The service maintenance package required that service be done at the selling dealer, which was the Hendrick Chevrolet dealership where Plaintiff had worked.

52.     The service maintenance package covered oil and filter changes, tire rotations, a multi-point inspection, and 24-Hour Roadside Service over a two-year period.

53.     On August 8, 2022, Plaintiff went to the car dealership for her oil change appointment. Plaintiff sat in the waiting room for about thirty minutes and did not speak with anyone but the service writer and one of the finance managers.

54.      Plaintiff was then approached by Gary Nelson, the Corvette Manager, who asked Plaintiff to come to his office.

55.     When Plaintiff walked around the corner towards Nelson's office, there were two police officers waiting to escort Plaintiff out of the building.

56.     Plaintiff was refused service at Hendrick Chevrolet Hoover and asked to leave.

57.     Nelson told Plaintiff that he would cancel her contract, which Plaintiff understood to be illegal without her signature since the service package was part of a bank contract.

58.     Hendrick Chevrolet Hoover never refunded the money Plaintiff paid for the package.

59.     Plaintiff was embarrassed and upset by Hendrick Chevrolet Hoover's disrespectful treatment of her. Hendrick Chevrolet Hoover clearly was retaliating against Plaintiff for filing an EEOC charge.

## IV.   FIRST CAUSE OF ACTION: HOSTILE WORK ENVIRONMENT ON THE BASIS OF GENDER IN VIOLATION OF TITLE VII

60.   The allegations set forth above are incorporated as though fully set forth herein.

61.   While Plaintiff worked for Defendant, she was subjected to a hostile work environment based on her gender that was severe and pervasive.

62.   The conduct by Defendant's employees based on Plaintiff's gender was sufficiently severe and pervasive to alter the conditions of her employment, and imputable to Defendant.

63.   Plaintiff subjectively perceived the environment to be abusive and hostile and the conduct of Defendant and its employees was such that a reasonable person in Plaintiff's position would have found the environment objectively hostile or abusive.

64.   Defendant had actual knowledge of the hostile work environment based on gender, condoned and tolerated the hostile work environment, and failed to exercise reasonable care to prevent and correct promptly any discriminatory behavior based on gender. Defendant's actions were in violation of Title VII.

65.   As a proximate cause and cause in fact of said treatment, Plaintiff was caused to suffer shame, humiliation, embarrassment, stress, emotional distress, pain, suffering, lost promotion, and lost benefits.

66.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for back pay, front pay, compensatory damages, punitive damages, attorneys' fees, expenses, costs, injunctive relief, and declaratory judgment is her only means of securing adequate relief.

67.     Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court.

68.     Plaintiff has satisfied all administrative prerequisites to bring this claim.

## PRAYER FOR RELIEF:

WHEREFORE, Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.     That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

b.     That Plaintiff recover back pay (with prejudgment interest), be reinstated or receive front pay, and that Plaintiff recover compensatory and punitive damages;

c.     That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

d.     Plaintiff further prays for such additional relief as the interests of justice may require.

## V.   SECOND CAUSE OF ACTION: DISPARATE TREATMENT ON THE BASIS OF GENDER IN VIOLATION OF TITLE VII

69.   The allegations set forth above are incorporated as though fully set forth herein.

70.   Plaintiff avers that based on the facts set forth herein that she was subjected to gender discrimination by Defendant.

71.   Plaintiff brings this claim under Title VII.

72.   Plaintiff, as a female, is a member of a protected class.

73.   Plaintiff was qualified for her positions as both Finance Manager and Finance Director.

74.   Defendant discriminated against Plaintiff in the terms, conditions, and privileges of employment because of her gender when Smith and others on more than one occasion changed Plaintiff's payment plan.

75.   Defendant discriminated against Plaintiff in the terms, conditions, and privileges of employment based on her gender, including, but not limited to, promoting her to Finance Director, but having Plaintiff do more than the previous male Finance Director, Josh Back.  Plaintiff had to do the Finance Manager's job and the Finance Director's job but was paid less than Back.

76.     Defendant discriminated against Plaintiff in the terms, conditions, and privileges of employment because of her gender, including, but not limited to, demoting Plaintiff and replacing her with a male.

77.     Defendant discriminated against Plaintiff in the terms, conditions, and privileges of employment because of her gender when it reduced her pay through compensation calculation changes and it required her to take the cash deals during and following her medical leave.

78.     Defendant also discriminated against Plaintiff in the terms, conditions, and privileges of employment because of her gender when it routinely scheduled Plaintiff to close the dealership and when it disciplined and terminated Plaintiff.

79.     Upon information and belief, Plaintiff was replaced by a male Finance Manager.

80.     Any stated reasons for the adverse employment actions against Plaintiff are false and pretextual.

81.     As a proximate cause and cause in fact of said disparate treatment, Plaintiff was caused to suffer shame, humiliation, embarrassment, stress, emotional distress, pain, suffering, lost promotion, and lost benefits.

WHEREFORE, Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

**PRAYER FOR RELIEF:**

a.    That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

b.    That Plaintiff recover back pay (with prejudgment interest), be reinstated or receive front pay, and that Plaintiff recover compensatory and punitive damages;

c.    That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

d.    Plaintiff further prays for such additional relief as the interests of justice may require.

## VI.   THIRD CAUSE OF ACTION: RETALIATION IN VIOLATION OF TITLE VII

82.    The allegations set forth above are incorporated as though fully set forth herein.

83.    Defendant retaliated against Plaintiff, after Plaintiff engaged in the protected activity of complaining to human resources about being treated differently based on her gender, by, among other things, disciplining her, changing her pay plan, requiring her to handle more cash deals, routinely scheduling her to close the dealership, and ultimately terminating her.

84.     As a proximate cause and cause in fact of said retaliation, Plaintiff was caused to suffer shame, humiliation, embarrassment, stress, emotional distress, pain, suffering, lost promotion, and lost benefits.

85.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for back pay, front pay, compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory judgment is his only means of securing adequate relief.  Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF:

WHEREFORE, Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.     That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

b.     That Plaintiff recover back pay (with prejudgment interest), be reinstated or receive front pay, and that Plaintiff recover compensatory and punitive damages;

c.     That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

d.      Plaintiff further prays for such additional relief as the interests of justice

may require.

## VII.   FOURTH CAUSE OF ACTION: DISCRIMINATION ON THE BASIS OF A DISABILITY IN VIOLATION OF THE ADAAA

86.     The allegations set forth above are incorporated as though fully set forth

herein.

87.     Plaintiff has disabilities and Defendant intentionally discriminated

against Plaintiff because of her disabilities, by disciplining her, changing her pay

plan, requiring her to handle more cash deals, routinely scheduling her to close the

dealership, and ultimately terminating her.

88.     Defendant perceived Plaintiff to have disabilities and intentionally

discriminated against her because of her perceived disabilities by, among other

things, disciplining her, changing her pay plan, requiring her to handle more cash

deals, routinely scheduling her to close the dealership, and ultimately terminating

her.

89.     Defendant had a record of Plaintiff having disabilities and intentionally

discriminated against her because of this record of her disabilities when it, among

other things, disciplined her, changed her pay plan, required her to handle more cash

deals, routinely scheduled her to close the dealership, and ultimately terminated her.

21

90.     Upon information and belief, Plaintiff was replaced by a non-disabled employee.

91.     The discriminatory actions of Defendant as set forth herein, has caused and will continue to cause Plaintiff to suffer losses of earnings, from the date of her termination until the date on which Plaintiff is rehired by Defendant, or finds substantially equivalent employment.

92.     As a further proximate result of Defendant's unlawful and intentional discriminatory actions against Plaintiff, as alleged above, Plaintiff has been harmed in that Plaintiff has suffered the intangible loss of such employment-related opportunities and experience in the position from which Plaintiff was terminated. As a result of such discrimination and consequent harm, Plaintiff has suffered such damages in an amount according to proof.

93.     As a further proximate result of Defendant's unlawful and intentional discriminatory actions against Plaintiff, as alleged above, Plaintiff has been harmed in that Plaintiff has suffered emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress. As a result of such discrimination and consequent harm, Plaintiff has suffered such damages in an amount according to proof.

## PRAYER FOR RELIEF:

WHEREFORE, Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

   a. That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

   b. That Plaintiff recover back pay (with prejudgment interest), liquidated damages, be reinstated or receive front pay, and that Plaintiff recover compensatory and punitive damages;

   c. That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

   d. Plaintiff further prays for such additional relief as the court deems proper and the interests of justice may require.

## VIII. FIFTH CAUSE OF ACTION: FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADAAA

94.    The allegations set forth above are incorporated as though fully set forth herein.

95.    Plaintiff has qualified disabilities under the ADAAA.

96.    Defendant perceived Plaintiff as a person with disabilities under the ADAAA.

97.    Defendant had a record of Plaintiff having disabilities under the ADAAA.

23

98.   Plaintiff requested reasonable accommodations so that she could perform the essential functions of her job.

99.   Defendant failed to accommodate Plaintiff's requests for accommodation to work reduced hours at work following her return from heart surgery.

100.  Defendant failed to engage in the interactive process when Plaintiff requested the accommodation of reduced hours following her return from leave.

101.  Defendant's conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of Title I of ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630. 86.

102.  As a result of Defendant's discriminatory conduct, Plaintiff suffered and continues to suffer damages.

103.  As a proximate result of Defendant's unlawful and intentional discriminatory actions against Plaintiff, as alleged above, Plaintiff has been harmed in that she has suffered emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress. As a result of such discrimination and consequent harm, Plaintiff has suffered such damages in an amount according to proof.

## PRAYER FOR RELIEF:

WHEREFORE, Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

   a.   That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

   b.   That Plaintiff recover back pay (with prejudgment interest), liquidated damages, be reinstated or receive front pay, and that Plaintiff recover compensatory and punitive damages;

   c.   That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

   d.   Plaintiff further prays for such additional relief as the court deems proper and the interests of justice may require.

## IX.   SIXTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF THE ADAAA

104.   The allegations set forth above are incorporated as though fully set forth herein.

105.   As detailed in the above paragraphs, Plaintiff suffered retaliatory discipline and termination on the basis of her disabilities.

106.   Plaintiff engaged in protected activity by requesting workplace accommodations, including, but not limited to, leave for her heart surgery and reduced hours following her return to work from the surgery.

107.   Plaintiff also engaged in protected activity when she complained to HR of harassment based on her disabilities.

108.   Shortly after her requests for accommodation and her complaints to HR, Defendant retaliated against Plaintiff when it, among other things, disciplined her, changed her pay plan, required her to handle more cash deals, routinely scheduled her to close the dealership, and ultimately terminated her. Any reasons offered by Defendant for these adverse actions were pretext for retaliation.

109.   The retaliatory actions of Defendant as set forth herein, have caused and will continue to cause Plaintiff to suffer losses of earnings, from the date of her termination until the date on which Plaintiff is re-hired by Defendant, or finds substantially equivalent employment.

110.   As a further and proximate result of Defendant's unlawful and intentional retaliatory actions against Plaintiff, as alleged above, Plaintiff has been harmed in that Plaintiff has suffered the intangible loss of such employment-related opportunities as experience in the position from which Plaintiff was terminated. As a result of such retaliation and consequent harm, Plaintiff has suffered such damages in an amount according to proof.

111.   As a further proximate result of Defendant's unlawful and intentional retaliatory actions against Plaintiff, as alleged above, Plaintiff has been harmed in that she has suffered emotional pain, humiliation, mental anguish, loss of enjoyment of life, and emotional distress. As a result of such discrimination and consequent harm, Plaintiff has suffered such damages in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment as follows:

a.   That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

b.   That Plaintiff recover back pay (with prejudgment interest), liquidated damages, be reinstated or receive front pay, and that Plaintiff recover compensatory and punitive damages;

c.   That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

d.   Plaintiff further prays for such additional relief as the court deems proper and the interests of justice may require.

## X.   SEVENTH CAUSE OF ACTION: HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADAAA

112.   The allegations set forth above are incorporated as though fully set forth herein.

113.   While Plaintiff worked for Defendant, she was subjected to a hostile work environment based on her disabilities that was severe and pervasive.

27

114.   The conduct by Defendant's employees based on Plaintiff's disabilities was sufficiently severe and pervasive to alter the conditions of her employment, and imputable to Defendant.

115.   Plaintiff subjectively perceived the environment to be abusive and hostile and the conduct of Defendant and its employees was such that a reasonable person in Plaintiff's position would have found the environment objectively hostile or abusive.

116.   Defendant had actual knowledge of the hostile work environment based on disabilities, condoned and tolerated the hostile work environment, and failed to exercise reasonable care to prevent and promptly correct any discriminatory behavior based on gender. Defendant's actions were in violation of the ADAAA.

117.   As a proximate cause and cause in fact of said treatment, Plaintiff was caused to suffer shame, humiliation, embarrassment, stress, emotional distress, pain, suffering, lost promotion, and lost benefits.

118.   Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for back pay, front pay, compensatory damages, punitive damages, attorneys' fees, expenses, costs, injunctive relief, and declaratory judgment is her only means of securing adequate relief.

119.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court.

120.    Plaintiff has satisfied all administrative prerequisites to bring this claim.

## PRAYER FOR RELIEF:

WHEREFORE, Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.    That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

b.    That Plaintiff recover back pay (with prejudgment interest), be reinstated or receive front pay, and that Plaintiff recover compensatory and punitive damages;

c.    That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

d.    Plaintiff further prays for such additional relief as the interests of justice may require.

## XI.    EIGHTH CAUSE OF ACTION: DISCRIMINATION IN VIOLATION OF THE ADEA

121.    The allegations set forth above are incorporated as though fully set forth herein.

122.    Plaintiff avers that based on the facts set forth herein that she was subjected to age discrimination by Defendant.

123.    Plaintiff brings this claim under the ADEA.

124.    Plaintiff, as a 51-year-old, is a member of a protected class.

125.   Plaintiff was qualified for her positions as both Finance Manager and Finance Director.

126.   Defendant discriminated against Plaintiff based on her age when Defendant on more than one occasion changed her payment plan.

127.   Defendant discriminated against Plaintiff in the terms, conditions, and privileges of employment based on her age, including, but not limited to, promoting her to Finance Director, but having Plaintiff do more than the previous, younger Finance Director, Josh Back.  Plaintiff had to do the Finance Manager's job and the Finance Director's job but was paid less than Back.

128.   Defendant discriminated against Plaintiff in the terms, conditions, and privileges of employment because of her age, including, but not limited to, demoting Plaintiff and replacing her with a younger and less qualified male.

129.   Defendant discriminated against Plaintiff in the terms, conditions, and privileges of employment because of her age when it reduced her pay through compensation calculation changes and it required her to take the cash deals during and following her medical leave.

130.   Defendant also discriminated against Plaintiff in the terms, conditions, and privileges of employment because of her age when it routinely scheduled Plaintiff to close the dealership and when it disciplined and terminated Plaintiff.

131.   Upon information and belief, Plaintiff was replaced by a younger Finance Manager following her termination.

132.   Any stated reasons for the adverse employment actions against Plaintiff are false and pretextual.

133.   Plaintiff was subjected to disparate treatment based on her age, in violation of the ADEA.

134.   As a proximate cause and cause in fact of said disparate treatment, Plaintiff was caused to suffer shame, humiliation, embarrassment, stress, emotional distress, pain, suffering, lost promotion, and lost benefits.

## PRAYER FOR RELIEF:

WHEREFORE, Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a. That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

b. That Plaintiff recover back pay, liquidated damages, be reinstated or receive front pay, and that Plaintiff recover compensatory and punitive damages;

c. That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

d. Plaintiff further prays for such additional relief as the interests of justice may require.

## XII.  NINTH CAUSE OF ACTION: RETALATION IN VIOLATION OF THE ADEA

135.   The allegations set forth above are incorporated as though fully set forth herein

136.   Defendant retaliated against Plaintiff, after Plaintiff engaged in the protected activity of complaining to human resources about being treated differently based on her age, by, among other things, disciplining her, changing her pay plan, requiring her to handle more cash deals, routinely scheduling her to close the dealership, and ultimately terminating her.

137.   As a proximate cause and cause in fact of said retaliation, Plaintiff was caused to suffer shame, humiliation, embarrassment, stress, emotional distress, pain, suffering, lost promotion, and lost benefits.

138.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for back pay, front pay, compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory judgment is his only means of securing adequate relief.  Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF:

WHEREFORE, Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a. That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

b. That Plaintiff recover back pay, liquidated damages, be reinstated or receive front pay, and that Plaintiff recover compensatory and punitive damages;

c. That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

d. Plaintiff further prays for such additional relief as the interests of justice may require.

## XIII.  TENTH CAUSE OF ACTION: HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADEA

139.   The allegations set forth above are incorporated as though fully set forth herein.

140.   While Plaintiff worked for Defendant, she was subjected to a hostile work environment based on her age that was severe and pervasive.

141.   The conduct by Defendant's employees based on Plaintiff's age was sufficiently severe and pervasive to alter the conditions of her employment, and imputable to Defendant.

142.   Plaintiff subjectively perceived the environment to be abusive and hostile and the conduct of Defendant and its employees was such that a reasonable person in Plaintiff's position would have found the environment objectively hostile or abusive.

143.   Defendant had actual knowledge of the hostile work environment based on age, condoned and tolerated the hostile work environment, and failed to exercise reasonable care to prevent and promptly correct any discriminatory behavior based on gender. Defendant's actions were in violation of the ADEA.

144.   As a proximate cause and cause in fact of said treatment, Plaintiff was caused to suffer shame, humiliation, embarrassment, stress, emotional distress, pain, suffering, lost promotion, and lost benefits.

145.   Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for back pay, front pay, compensatory damages, punitive damages, attorneys' fees, expenses, costs, injunctive relief, and declaratory judgment is her only means of securing adequate relief.

146.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court.

147.   Plaintiff has satisfied all administrative prerequisites to bring this claim.

## PRAYER FOR RELIEF:

WHEREFORE, Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

    a. That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

    b. That Plaintiff recover back pay, liquidated damages, be reinstated or receive front pay, and that Plaintiff recover compensatory and punitive damages;

    c. That Plaintiff recover an award of reasonable attorneys' fees, costs, and expenses;

    d. Plaintiff further prays for such additional relief as the interests of justice may require.

## XIV.  ELEVENTH CAUSE OF ACTION: BREACH OF CONTRACT

148.   The allegations set forth above are incorporated as though fully set forth herein.

149.   During the time that Plaintiff was employed by Defendant, Plaintiff purchased a vehicle from Defendant and entered into a contract, a service maintenance package (the "Contract"), with Defendant under which Defendant agreed to service the vehicle that Plaintiff purchased with Hendrick Chevrolet Hoover.

150.   Plaintiff fully performed under the Contract.

151.   Defendant materially breached the Contract by refusing to provide Plaintiff maintenance service under the contract.

152.   Because of Defendant's breaches of the Contract, Plaintiff has suffered and will continue to suffer damages.

153.   Defendant breached the Contract in retaliation for Plaintiff filing a charge against Defendant with the Equal Employment Opportunity Commission.

WHEREFORE, Plaintiff seeks judgment against Defendant for compensatory damages plus costs and interest, and such other relief as the Court may deem just and proper.

## **PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**


Respectfully Submitted,

/s/ *Susan N. Han*
Susan N. Han
(ASB-5096-A55N)
Nettles Han Law, LLC,
2100 First Avenue North, Suite 600
Birmingham, AL 35212
Tel: (205) 383-2296
Fax: (800) 856-9028
E-mail: susan@nettleshanlaw.com

**<u>PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL AT:</u>**

**HCDJHA, LLC a/k/a HENDRICK
CHEVROLET HOOVER,**
Registered Agent
CORPORATION SERVICE COMPANY INC
641 South Lawrence Street
Montgomery, AL 36104